IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEX PRINCE** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-3097 |
| | : | |
| **TRUMARK FINANCIAL CREDIT UNION** | : | |
| | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                                **October 18, 2022**

A credit union fired a Caucasian male branch manager after multiple complaints by Black employees concerning his alleged harassment. The branch manager claims his former employer did not fairly review his conduct but instead deferred to the Black employees because the employer did not want to challenge Black employees' complaints in the race relations environment of Fall 2020 and Spring 2021. But the branch manager must plead facts to show his former employer discriminated against him based on race or in retaliation for protected activity. He can show neither after two attempts. His claims essentially become his employer did not listen to his side of the story and instead believed the Black employees because of the color of their skin. The employer's conduct may not be the ideal in fact finding, but it is not discriminatory. The branch manager does not plead Black branch managers (or managers of any other race) are treated differently than him. He also does not plead protected activity leading to a retaliatory firing. The Black employees complained and the branch manager's employer decided to believe them and to preclude the branch manager from further contact with the Black employees. We dismiss the race discrimination and retaliation claims with prejudice after two attempts. We dismiss the branch manager's unexhausted Pennsylvania state law claim without prejudice to pursue this claim in state court when exhausted.

I.   **Alleged facts**

Trumark Financial Credit Union hired Alex Prince, a white male, in November 2019 as branch manager of its Fort Washington, Pennsylvania branch.[1] Trumark Financial hired Janel Johnson, a Black woman, for an unidentified position in August 2020 in the same branch under Mr. Prince's supervision.[2]

This dispute concerns Mr. Prince's supervision of Ms. Johnson in identified instances leading to his employer's decision to fire Mr. Prince on June 16, 2021. The first incident arose in November 2020 when an unnamed assistant branch manager reported Ms. Johnson pressured the assistant manager to return bank fees charged on Ms. Johnson's boyfriend's account.[3] The assistant manager provided Mr. Prince with a detailed email relating to Ms. Johnson's conduct.[4] Mr. Prince emailed his supervisor Karen Sweeney for "guidance" presumably on how to handle the assistant manager's concern.[5] Supervisor Sweeney called Mr. Prince into her office the next day and told him two Black female employees complained about him.[6] Mr. Prince asked about the nature of the complaints and Supervisor Sweeney told him it "regard[ed] reporting Ms. Johnson's misconduct."[7] Supervisor Sweeney told Mr. Prince "Trumark had a zero tolerance policy for any complaints from [B]lack employees in this environment."[8] The following day, an unidentified person told Mr. Prince neither he nor Ms. Johnson would receive disciplinary action "over this incident" and the incident "would be deemed a 'misunderstanding.'"[9]

Our second touchpoint arose during Mr. Prince's December 2020 annual performance review.[10] Trumark Financial provided Mr. Prince with a lower rating attributed to the November 2020 incident with Ms. Johnson and to another incident where Mr. Prince "corrected a former African American employee Mya for improperly berating a customer."[11] Ms. Johnson did not receive discipline.[12] Mr. Prince alleges Trumark Financial "disciplined [him] for doing his job by

2

correcting Mya for berating a customer and for forwarding an email indicating Ms. Johnson . . . [committed] potential fraudulent conduct."[13]

Our third touchpoint arises in May and June 2021 shortly before Trumark Financial fired Mr. Prince. Ms. Johnson had two other incidents with customers in May and June of 2021.[14] Ms. Johnson first had an incident with a customer which led to Mr. Prince attempting to counsel her.[15] Ms. Johnson ignored Mr. Prince's counseling by talking to another co-worker but later apologized to him.[16] Ms. Johnson then gave a debit card to the wrong customer due to her inattention.[17] An unidentified person presumably employed by Trumark Financial instructed Mr. Prince to have a stern discussion with Ms. Johnson but not take any disciplinary action.[18]

Trumark Financial decided to fire Mr. Prince on June 16, 2021 after another alleged vague complaint from Ms. Johnson about Mr. Prince.[19] Supervisor Sweeney did not provide detail or an opportunity for Mr. Prince to rebut Ms. Johnson's complaint.[20] Supervisor Sweeney then terminated Mr. Prince's employment for creating "a hostile work environment" and "retaliation."[21]

**II.   Analysis**

Mr. Prince sues his former employer Trumark Financial for firing him because he is a white branch manager who challenged perceived employee misconduct by Black employees working in his branch. He claims Trumark Financial did "not allow[] [him] to train, coach, discipline, or correct improper conduct of minority subordinates because he was Caucasian."[22] He alleges Trumark Financial engaged in race-based discrimination against him and retaliation under Title VII and the Pennsylvania Human Relations Act by firing him. Trumark Financial now moves to dismiss arguing Mr. Prince fails to state a claim for race-based discrimination and retaliation.[23] We dismiss Mr. Prince's federal claims for race discrimination and retaliation. Mr. Prince has not plead discrimination or retaliation under federal law after two attempts and we dismiss his federal

3

claims with prejudice. We dismiss Mr. Prince's state law claim without prejudice as he may pursue this claim in state court after exhausting the administrative process.

      A.      **We dismiss the federal discrimination claim.**

Mr. Prince alleges Trumark Financial discriminated against him because he is Caucasian.[24] He first alleges Trumark Financial did "not allow[] [him] to train, coach, discipline or correct improper conduct of minority subordinates because he was Caucasian."[25] He next alleges Trumark Financial violated his rights by "terminating him, treating him differently, disciplining him and retaliating against [him] for doing his job, because of his race."[26] Mr. Prince claims Trumark Financial terminated him based on his race. Trumark Financial argues Mr. Prince has not alleged facts giving rise to an inference of discrimination. We agree and dismiss the federal discrimination claim. Mr. Prince does not, and apparently cannot, plead his employer treated him differently than it treated any other manager regardless of his or her race.

Congress, in Title VII of the Civil Rights Act of 1964, prohibits employers from "discharg[ing] any individual … because of such individual's race."[27] Mr. Prince must plead discrimination based on his white race by pleading facts allowing us to plausibly infer (1) he is a member of a protected class; (2) held the qualifications for the position; (3) suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination.[28] Our Court of Appeals recognizes a white man can claim "reverse discrimination" under Title VII.[29] The first prong of the *prima facie* case – membership in a protected class – is satisfied notwithstanding his race and gender.[30] Mr. Prince is not required at the pleading stage to prove the elements of a *prima facie* case, but he must allege facts raising a reasonable expectation discovery will reveal evidence of the necessary elements.[31] Mr. Prince must

allege sufficient facts of reverse discrimination to allow us to conclude his former employer treated him less favorably than others based upon a trait protected under Title VII.[32]

### 1. Mr. Prince's allegations Trumark Financial did not allow him to train, coach, discipline, or correct improper conduct of minority employees because he is Caucasian is not an adverse employment action.

Mr. Prince alleges Trumark Financial did "not allow[] [him] to train, coach, discipline or correct improper conduct of minority subordinates because he was Caucasian."[33] To the extent Mr. Prince is arguing this prohibition is an adverse employment action, he is incorrect. Mr. Prince's termination is the only adverse employment action plead.

An adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."[34] Our Court of Appeals further clarified the protection by describing an adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[35] Mr. Prince alleges no facts he received lower pay, change in benefits or privileges, or other consequence for not being allowed "to train, coach, discipline, or correct improper conduct of minority employees because he was Caucasian."[36] This allegation is not an adverse employment action. Mr. Prince's allegation his "race was a motivating and/or determinative factor in connection with" his termination is the only adverse employment action we consider.[37]

### 2. Mr. Prince does not allege facts giving rise to an inference of unlawful discrimination.

Trumark Financial argues Mr. Prince does not allege facts creating an inference of race discrimination.[38] It argues Mr. Prince fails to allege Trumark Financial subjected him to racially based offensive conduct or comments, replaced Mr. Prince with someone outside his protected class, or treated him differently than a similarly situated employee.[39] Mr. Prince counters Trumark

5

Financial disciplined him and terminated his employment because he is Caucasian and his employer chose to not discipline minority employees "who actually engaged in the improper conduct."[40] Mr. Prince essentially argues Trumark Financial fired him as a supervisor because he is white but did not discipline the Black employees who he believes engaged in improper conduct.

The Supreme Court instructs "[s]ome methods of producing an inference of discrimination include, but are not limited to 'comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus."[41] None are alleged by Mr. Prince. Mr. Prince only alleges his employer Trumark Financial did not "allow[] [him] to train, coach, discipline, or correct improper conduct of minority subordinates because he was Caucasian" for support indicating Mr. Prince's "race was a motivating and/or determinative factor" in the employment termination.[42]

We are mindful judges dismiss claims for reverse discrimination under Title VII when there are "no factual allegations connecting [the employee's] termination to his race" and when "the amended complaint is also devoid of allegations that similarly situated non-members of his protected class (non-Caucasians) were treated more favorably."[43] Mr. Prince repeatedly argues his employer did not discipline minority employees for their improper behavior.[44] But Ms. Johnson or Mya cannot be a comparator for Mr. Prince because they are his subordinates which prevents them from being "similarly situated in all relevant aspects."[45] They cannot be comparators because they do not hold the same job as Mr. Prince.[46] These alleged comparators also did not engage in similar conduct as Mr. Prince. Ms. Johnson pressured a co-worker to return bank fees on her boyfriend's account; Mya berated a Trumark Financial customer; and, Mr. Prince engaged in supervisorial management of minority employees.[47] We are persuaded by the reasoning of Judges O'Neill and Schmehl in dismissing complaints when the allegedly discriminated employee fails to

6

allege enough facts to consider the employee's comparators.[48] Mr. Prince pleads no facts to allow us to conclude Trumark Financial treated Black branch managers differently from him based upon his race.[49] We dismiss Mr. Prince's claim for discrimination under Title VII with prejudice.

### B. We dismiss the federal retaliation claim.

Congress provides remedies to protects employees who participate in certain Title VII proceedings and those who oppose discrimination made unlawful by Title VII.[50] Mr. Prince alleges his "race was a motivating and/or determinative factor in connection with" Trimark Financial's discriminatory and retaliatory conduct.[51] Trumark Financial moves to dismiss Mr. Prince's retaliation claim because he failed to plead he engaged in a "protected activity." Mr. Prince argues Trumark Financial ultimately terminated him for refusing to follow Supervisor Sweeney's race-based discrimination in performing his job duties.[52] We agree with Trumark Financial and dismiss the retaliation claim.

Mr. Prince must plead a *prima facie* case for retaliation by alleging (1) he engaged in protected activity; (2) his employer took an adverse action either after or contemporaneous with his protected activity; and (3) a causal connection between the protected activity and the adverse action.[53] A "protected activity" is "an instance where an employee has opposed any practice made unlawful or has made a charge, testified, assisted, or participated in an investigation under Title VII."[54]

Mr. Prince does not allege he complained about or opposed unlawful discrimination or unfair treatment to Trumark Financial. Mr. Prince's email to an unnamed assistant manager related to Ms. Johnson's conduct of pressuring another employee to return her boyfriend's bank fees; it did not mention unlawful discrimination.[55] Supervisor Sweeney's directive of "complaints by minority employees would not be tolerated" also cannot be the argued "protected activity."[56]

7

Supervisor Sweeney's directive is not a practice made unlawful by Title VII nor does it suggest Mr. Prince participated in a Title VII investigation. The only complaints about "hostile work environment" or "retaliation" which could be deemed protected activity are Ms. Johnson's and Mya's grievances about Mr. Prince.[57] But those complaints would be Ms. Johnson's or Mya's protected activity, not Mr. Prince's. Mr. Prince's lack of an alleged "protected activity" is fatal to his retaliation claim.[58] We dismiss this claim with prejudice as Mr. Prince has now twice failed to plead protected activity.

      **C.**      **We dismiss the unexhausted Pennsylvania claims.**

We must dismiss Mr. Prince's discrimination and retaliation claims under the Pennsylvania Human Relations Act because we lack jurisdiction.

We do not enjoy subject matter jurisdiction over a claim under the Pennsylvania Human Relations Act if the employee failed to exhaust administrative remedies.[59] The Pennsylvania Human Relations Commission's mandatory one-year investigation period must expire before a suit may be brought.[60] The Pennsylvania Human Relations Commission retains exclusive jurisdiction until then.[61] Mr. Prince cross-filed his charges of discrimination with the Equal Employment Opportunity Commission and the "Pennsylvania Human Rights [sic] Commission" on October 27, 2021.[62] The Pennsylvania Human Relations Commission retains exclusive jurisdiction on Mr. Prince's charges until October 27, 2022. Mr. Prince sued on August 5, 2022, well before the mandatory one-year investigation period expires.[63] We dismiss Mr. Prince's claims under the Pennsylvania Human Relations Act without prejudice for lack of subject matter jurisdiction.

**III.    Conclusion**

We dismiss Mr. Prince's reverse discrimination and retaliation claims under Title VII with prejudice for failure to state a claim after two attempts. We dismiss Mr. Prince's claims under the Pennsylvania Human Relations Act without prejudice because we do not have subject matter jurisdiction.

---

[1] ECF Doc. No. 10 ¶¶ 16, 17.

[2] *Id.* ¶ 18.

[3] *Id.* ¶ 19.

[4] *Id.* ¶ 20.

[5] *Id.* ¶ 21.

[6] *Id.* ¶ 22

[7] *Id.*

[8] *Id.* Mr. Prince does not identify what he understood Supervisor Sweeney to mean with "this environment." But we cannot ignore publicly known facts regarding race relations in Fall 2020. Federal Rule of Evidence 201 permits a federal court to "judicially notice" an "adjudicative fact . . . not subject to reasonable dispute" because it "is generally known within the trial court's territorial jurisdiction," or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a), (b)(1)-(2). We may take judicial notice of a newspaper article's existence on a Motion to dismiss. *See Selkridge v. United of Omaha Life Insurance Co.*, 360 F.3d 155, 162, n. 5 (3d Cir.2004). November 2020 is approximately five months after the George Floyd murder in Minnesota and a national protest in support of Black persons allegedly harmed by police. We take judicial notice of media reports showing after George Floyd's murder, protests occurred throughout the country with millions of people protesting under the Black Lives Matter Movement. Larry Buchanan, Quoctrung Bui, and Jugal K. Patel, Black Lives Matter May Be the Largest Movement in U.S. History, NEW YORK TIMES (July 3, 2020), https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html.

[9] ECF Doc. No. 10 ¶ 23.

[10] *Id.* ¶ 24.

[11] *Id.* ¶ 24.

---

[12] *Id.*

[13] *Id.* ¶ 25.

[14] *Id.* ¶¶ 26–27.

[15] *Id.* ¶ 26.

[16] *Id.*

[17] *Id.* ¶ 27.

[18] *Id.* ¶ 28.

[19] *Id.* ¶ 29.

[20] *Id.*

[21] *Id.*

[22] *Id.* ¶ 30.

[23] ECF Doc. No. 12. Trumark Financial moved to dismiss Mr. Prince's original Complaint. *See* ECF Doc. No. 5. Mr. Prince amended his Complaint. *See* ECF Doc. Nos. 7, 9. Trumark now moves to dismiss Mr. Prince's first amended Complaint representing his second attempt to plead race-based discrimination and retaliation.

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare

recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[24] ECF Doc. No. 10 ¶¶ 30–32.

[25] *Id.* ¶ 30.

[26] *Id.* ¶¶ 31–32.

[27] 42 U.S.C. § 2000e-2(a)(1).

[28] *Connelly*, 809 F.3d at 787–88.

[29] *Durst v. City of Phila.*, 798 F. App'x 710, 713, n. 2 (3d Cir. 2020) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999)) ("Because [employee] is Caucasian, his claim is referred to as a "reverse discrimination" claim, which this Circuit recognizes.").

[30] *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 517 (E.D. Pa. 2012) (citing *Iadimarco*, 190 F.3d at 157–58)).

[31] *Koller*, 850 F. Supp. 2d at 517 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). *See also Connelly*, 809 F.3d at 788–89 (for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss because a *prima facie* case is "an evidentiary standard, not a pleading requirement … and hence is not a proper measure of whether a complaint fails to state a claim") (quoting *Fowler*, 578 F.3d at 213) (cleaned up).

[32] *See Koller*, 850 F. Supp. 2d at 517 (To establish a prima facie case in a reverse discrimination suit, evidence must be "adequate to create an inference that the adverse employment action [*or less favorable treatment*] was based on a trait protected by Title VII.") (emphasis added).

[33] ECF Doc. No 10 ¶ 30.

[34] *Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp. 3d 410, 419 (E.D. Pa. 2014) (citing *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citing *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir.2004).

11

---

[35] *Yarnall*, 57 F. Supp at 419 (citing *Durham Life Ins. Co. v. Evans*, 166 F.3d, 139, 152–53 (3d Cir.1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, (1998)).

[36] ECF Doc. No. 10 ¶ 30.

[37] *Id.* ¶ 31.

[38] ECF Doc. No. 12 ¶ 14.

[39] *Id.* ¶ 3.

[40] ECF Doc. No 13-1 at 8.

[41] *Golod v. Bank of Am. Corp.*, 403 F. App'x. 699, 703 n.2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)).

[42] ECF Doc. No. 10 ¶¶ 30–31.

[43] *Angelini v. U.S. Facilities, Inc.*, No. 17-4133, 2018 WL 3155995, at *5 (E.D. Pa. June 27, 2018).

[44] ECF Doc. No. 13-1 at 8–9.

[45] *Durst*, 798 F. App'x at 713 (3d Cir. 2020) ("Relevant factors include whether the comparators had the same supervisor, were subject to the same standards, and had engaged in similar conduct.").

[46] *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 375 (E.D. Pa. 2015) ("[T]o be similarly situated, the other employee must hold the same position as the plaintiff and be subject to the same circumstances."). At the motion to dismiss stage, the employee must allege facts sufficient to make plausible the existence of similarly situated parties. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011).

[47] ECF Doc. No. 10 ¶¶ 19, 21–22, 24–25.

[48] *See e.g.*, *Braddock v. SEPTA*, No. 13-06171, 2014 WL 2764862, at *5 (E.D. Pa. June 18, 2014); *Henry v. City of Allentown*, No. 12-1318, 2013 WL 6409307, at *3–4 (E.D. Pa. Jan. 9, 2013).

[49] Trumark Financial allegedly fired Mr. Prince for "creating a 'hostile work environment' and for 'retaliation'" and violating Trumark Financial's "zero tolerance policy for any complaints from Black employees in this environment." ECF Doc. No. 10 ¶ 22. We cannot leap to the inference Trumark Financial fired Mr. Prince because of unlawful racial discrimination. The inference we could reasonably draw is Trumark Financial did not want Mr. Prince to "train, coach, discipline, or correct improper conduct of minority subordinates" because of the earlier complaints by minority employees about Mr. Prince creating "a hostile work environment" or "retaliation." *See id.* ¶¶ 29–30. Mr. Prince does not plead Trumark Financial terminated his employment for being racist or racially insensitive but his allegations Trumark Financial fired him "for creating a hostile

work environment and retaliation" against Black employees allows us to reasonably make the inference. *See id*. We are persuaded by Judge Beetlestone's observation in *Bank v. Community College of Philadelphia* "to hold that Title VII shields employees from being perceived as racist or from being accused of racist conduct would 'turn Title VII on its head' and impede employers in the critical work of combatting racism in the workplace." No. 22-293, 2022 WL 2905243 at *5 (E.D. Pa July 22, 2022). Our Court of Appeals affirms this view. *See DeCarolis v. Presbyterian Med. Ctr. of Univ. of Pa. Health Sys.*, 554 F. App'x 100, 104 (3d Cir. 2014).

[50] *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006).

[51] ECF Doc. No. 10 ¶ 31.

[52] ECF Doc. No. 13-1 at 10.

[53] *Canada v. Samuel Grossi & Sons, Inc.*, --- F.4th ---, No. 20-2747, 2022 WL 4242827 (3d Cir. Sept. 15, 2022) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

[54] *Wadhwa v. Sec'y, Dep't of Veterans Affs.*, 505 F. App'x 209, 214 (3d Cir. 2012).

[55] ECF Doc. No. 10 ¶¶ 19–21.

[56] ECF Doc. No. 13-1 at 10.

[57] ECF Doc. No. 10 ¶¶ 22, 29.

[58] *See Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 543 (E.D. Pa. 2016) (dismissing amended complaint for failure to show employee engaged in a "protected activity.").

[59] *Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 F. App'x 698, 703 (3d Cir. 2009) (citing *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979).

[60] *See Rosetsky*, 350 F. App'x at 703.

[61] *Szurgyjlo v. Sourceone Pharmacy Servs.*, LLC, No. 20-4304, 2020 WL 7249095, at *2 (E.D. Pa. Dec. 9, 2020).

[62] ECF Doc. No. 10 ¶ 13.

[63] *See* ECF Doc. No. 1.